THE STATE, EX REL. STEPHENSON, APPELLEE, *v.* INDUSTRIAL COMMISSION OF OHIO, APPELLANT.

[Cite as State, ex rel. Stephenson, *v.* Indus. Comm. (1987), 31 Ohio St. 3d 167.]

(No. 86-1007—Decided July 8, 1987.)

*Beall, Hermanies, Bortz & Major, John H. Hermanies* and *Ronald D. Major,* for appellee.

*Anthony J. Celebrezze, Jr.,* attorney general, *Janet E. Jackson* and *Tyrone Yates,* for appellant.

*Per Curiam.* The primary issue in this case is whether the Industrial Commission had before it some evidence upon which to decide that the relator-claimant was not permanently and totally disabled. We do not pronounce new law in this opinion, but reiterate established law, so as to hopefully clarify the current law of Ohio relative to the jurisdiction of the Industrial Commission to review the claimant's file, and to determine whether there exists sufficient evidence to conclude the ultimate issue. It is basic law, without need of citation, that the Industrial Commission has considerable discretion in the performance of its duties; that its actions are presumed to be valid and performed in good faith and judgment, unless shown to be otherwise; and that so long as there is some evidence in the file to support its findings and orders, this court will not overturn such.

It is also basic law that the purpose of permanent and total disability benefits is to compensate injured persons for impairment of earning capacity. *State, ex rel. General Motors Corp.,* v. *Indus. Comm.* (1975), 42 Ohio St. 2d 278, 71 O.O. 2d 255, 328 N.E. 2d 387. In determining permanent total disability, the Industrial Commission must evaluate the evidence concerning the degree to which the claimant's ability to work has been impaired. The ultimate consideration is whether the claimant is " 'unfit for sustained remunerative employment.' " (Emphasis deleted.) *State, ex rel. Paragon,* v. *Indus. Comm.* (1983), 5 Ohio St. 3d 72, 5 OBR 127, 448 N.E. 2d 1372. Any conclusion with regard to permanent total disability must address the claimant's ability to work. *State, ex rel. Hutt,* v. *Frick-Gallagher Mfg. Co.* (1984), 11 Ohio St. 3d 184, 11 OBR 497, 464 N.E. 2d 1005.

In making a determination of the degree to which the claimant's ability to work has been impaired, and to answer the query as to whether the claimant is unfit to work at any sustained remunerative employment, the commission must look to a broad number of pertinent factors. It must review all the evidence in the record including the doctors' reports and opinions. The commission must also review any evidence relative to the claimant's age, education, work record, psychological or psychiatric factors if present, and that of a sociological nature. The commission should consider any other factors that might be important to its determination of whether this specific claimant may return to the job market by utilizing her past employment skills, or those skills which may be reasonably developed.

Typically, to gain such insight, the commission relies upon the doctors' reports. These usually include the examination of the claimant and a medical analysis of the physical condition highlighting the allowed injury. The doctors' determination of the severity of the physical condition generally presents a conclusion as to the examinee's percentage of physical impairment of function. Doctors' reports regularly use the words "disability" and "impairment" interchangeably, which use is not in accordance with the Medical Examination Manual issued by the Industrial Commission. However, in the context of the medical report, it may be concluded that reference to the claimant's physical impairment is generally intended. This court, in *State, ex rel. Dallas,* v. *Indus. Comm.* (1984), 11 Ohio St. 3d 193, 11 OBR 504, 464 N.E. 2d 567, and *Meeks* v. *Ohio Brass Co.* (1984), 10 Ohio St. 3d 147, 10 OBR 482, 462 N.E. 2d 389, noted the different meanings of the terms. We pointed out that "impairment" is the amount of a claimant's anatomical and/or mental loss of function and is to be determined by the doctors and set forth within the medical reports. We also noted that "disability" is the effect that the physical impairment has on the claimant's ability to work, which is to be determined by the Industrial Commission and its hearing officers.

Additionally, doctors' reports quite regularly indicate their opinion as to whether a claimant would be able to perform his prior employment functions, or any employment functions. These types of conclusions arguably go beyond the question of impairment and transcend into the job market-disability issue. The fact that a doctor's report offers an opinion as to the ultimate fact to be determined by the commission does not necessarily detract from the reliability of the report. The utilization of the term "disability" by doctors in their reports has been tacitly recognized over the years by this court in our opinions and syllabus law. Yet it remains the ultimate authority and duty of the commission to determine the totality and permanency of the allowed injury. The commission is not required to accept the factual findings stated in a medical report at face value and, without questioning such, adopt the conclusions as those of the commission. This court, in *State, ex rel. Teece,* v. *Indus. Comm.* (1981), 68 Ohio St. 2d 165, 22 O.O. 3d 400, 429 N.E. 2d 433, stated that to do so would be tantamount to allowing a physician to determine disability rather than the commission. Questions of credibility and the weight to be given evidence are clearly within the commission's discretionary powers. See, generally, *State, ex rel. Ohio Bell Telephone Co.,* v. *Krise* (1975), 42 Ohio St. 2d 247, 71 O.O. 2d 226, 327 N.E. 2d 756.

It is interesting to note that in the review of the record before us, the referee's report adopted by the court of appeals sets forth basically sound law. It then proceeds to cite a case with an inapposite factual situation, upon which the referee based his conclusion. The referee's report quite correctly noted that merely because "Dr. Gillis offered an opinion on the ultimate issue to be determined does not detract from the reliability of his report." Also, we believe the referee's report quite correctly stated: "The

fact that a claimant may be precluded from returning to his or her former position of employment does not, *ipso facto,* entitle the claimant to compensation for permanent and total disability if, in fact, the Industrial Commission has before it evidence indicating that the claimant is not precluded from performing other employment."

The referee's report then proceeded to compare the doctor's opinion in this case with that in *Kokocinski, supra,* as follows: "In the instant case, while Dr. Gillis expressly indicated a belief that relator was not precluded from performing other employment, he also stated that such employment would necessarily have to contemplate activities other than those relator had previously performed. * * * Dr. McCloud [in *Kokocinski*] indicated that based upon a consideration of non-impairment factors, the claimant would have difficulty finding work other than that which she had previously performed, and that the latter duties would be difficult for the claimant to perform based upon her medical impairment."

The referee's report points out that this court, in *Kokocinski,* "rightfully determined that Dr. McCloud's report did not support a conclusion that the claimant therein was not permanently and totally disabled." Similarly, the referee's report concluded that Dr. Gillis' opinion is not some evidence upon which the Industrial Commission could have based its determination.

It is important to note the differences within the facts of this case and those in *Kokocinski.* In *Kokocinski* the claimant was a lady sixty-three years of age with little education or job skills, who at the time of the injury was working as a janitress, *i.e.,* unskilled manual labor. There was absolutely no evidence in the record that she could have been employed in any other capacity. Accordingly, this court held at 189, 11 OBR at 502, 464 N.E. 2d at 567, that the claimant's "* * * educational and vocational background limit[ed] her employment opportunities to those involving unskilled manual labor. Her injury effectively prevent[ed] her from performing those types of activities. There was no evidence upon which the commission could have determined otherwise* * *."

In the present case, at the time of the commission's denial of permanent total disability, the claimant was a woman thirty-nine years of age with a varied employment background including work in the printing business as a typesetter. In this particular job she evidently read copy material, selected and set type, and functioned generally in a position which required reading, writing and letter alignment capability. She obviously had the manual dexterity to accomplish type placement within the type frames. These employment skill data, within the record before the commission here, are quite different than those found in the facts of *Kokocinski.*

We reiterate that the determination of permanent total disability, and whether or not the claimant could return to any other remunerative employment, is an ultimate finding, totally within the province of the com-

mission. We hold it to be necessary that the commission look at the claimant's age, education, work record, and all other factors, such as physical, psychological, and sociological, that are contained within the record in making its determination of permanent total disability.

Perhaps these factors were considered by the commission, but because we find no indication in the commission's order that such factors were considered by the commission in reaching its decision on the percentage of permanent total disability of appellee, see *State, ex rel. Mitchell,* v. *Robbins & Myers, Inc.* (1983), 6 Ohio St. 3d 481, 6 OBR 531, 453 N.E. 2d 721, we reverse the judgment of the court of appeals and remand this cause to the commission for consideration of said factors, if previous consideration had not been given, and an amended order stating the commission's findings after such consideration.

*Judgment reversed and cause remanded.*

SWEENEY, Acting C.J., COOK, LOCHER, HOLMES, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.

SWEENEY, J., sitting for MOYER, C.J.

COOK, J. of the Eleventh Appellate District, sitting for SWEENEY, J.