DECISION ON OBJECTIONS TO MAGISTRATE'S DECISION
{¶ 1} Relator, Holman Motors, Inc., has filed this original action in mandamus requesting this court to issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its order which granted permanent total disability compensation to respondent George W. Bishop and to enter a new order denying said compensation.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate concluded that relator had failed to demonstrate that the commission had abused its discretion and that this court should deny the requested writ.
 {¶ 3} Relator filed objections to the decision of the magistrate arguing that the magistrate erred in failing to limit her initial focus to the question of whether relator's offer of employment to respondent-claimant constituted a bona fide offer of sustained remunerative employment, as provided for in Ohio Adm. Code4121-3-34(D)(1)(e), such that respondent-claimant's refusal to accept such an offer necessitated a finding that he was not permanently and totally disabled. Relator further argued that the magistrate erred in finding the employment offer lacked sufficient specificity to constitute a bona fide job offer and that its "temporary" nature precluded it from being a bona fide job offer. Respondent-commission and respondent-claimant filed responses to these objections supporting the decision of the magistrate.
 {¶ 4} Relator has failed to establish that the commission abused its discretion in finding that the claimant's refusal to accept the job offer from the employer, absent a more detailed description of the job duties, constituted an abandonment of employment pursuant to Ohio Adm. Code4121-3-34(D)(1)(e). While relator's characterization of that offer, "scheduling staff to perform walk-thrus on the RV's" might indeed mean that claimant "would be provided a calendar and would be required to open up a page and schedule a time" it was within the range of the discretion of the commission to determine that, in the absence of such explanatory detail, that the offer did not constitute a bona fide job offer necessitating a denial of permanent total disability compensation. Accordingly, the objections are overruled.
 {¶ 5} Following an independent review pursuant to Civ.R. 53, we find that the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt that decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with that decision, the requested writ is denied.
Objections overruled; writ denied.
Petree and Sadler, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
[State ex rel.] Holman Motors, Inc., :
 Relator, :
v. : No. 03AP-1094
George W. Bishop and : (REGULAR CALENDAR)
The Industrial Commission of Ohio,
 Respondents. :
 MAGISTRATE'S DECISION Rendered on March 29, 2004 Dinsmore Shohl, LLP, Christopher A. Benintendi and Theresa M.Muhic, for relator.
Clements, Mahin Cohen, LPA, Co., and Catharin R. Taylor, for respondent George W. Bishop.
Jim Petro, Attorney General, and Phil Wright, Jr., for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 6} Relator, Holman Motors, Inc., has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which granted permanent total disability ("PTD") compensation to respondent George W. Bishop ("claimant").
Findings of Fact:
 {¶ 7} 1. Claimant sustained two industrial injures which are the subject of this mandamus action; one with relator and one with Garfield Electric. Claimant's workers' compensation claims have been allowed for the following conditions:
[Claim] 02-376652: Fracture femur intracapsular nec-closedleft; tear rotator cuff left.
[Claim] 93-28142: Fracture upper tibia/fibula-closed; sprain medial collateral ligament-right knee, sprain cruciate ligamentright knee; posterior cruciate ligament tear-right knee.
 {¶ 8} 2. Claimant had surgery on June 12, 2002, and was able to return to work with relator on September 4, 2002. When he returned to work he had restrictions including working three days per week, five hours each day, taking ten minute breaks every hour, and being able to sit.
 {¶ 9} 3. On October 15, 2002, claimant was evaluated by his treating physician, Dr. Charles Miller, and was told to continue with the job limitations permanently and return to the office in three months.
 {¶ 10} 4. Claimant returned to see Dr. Miller sooner than three months and, on November 5, 2002, he presented walking with a limp and having more pain in his left arm. At that time, Dr. Miller recommended that claimant not do the type of work that he was currently performing for relator and, instead, perform only sedentary activities. In his November 29, 2002 report, Dr. Miller noted further as follows:
Until I can review and approve a job description that would allow Mr. Bishop to do sitting, sedentary work only, it is my medical opinion that he should be kept off work permanently due to the nature of the injuries he sustained. This job would have to meet the following criteria for me to approve Mr. Bishop returning to work. He could do no standing, walking, lifting, bending, stooping, and twisting. He must be in a position to sit only and for a limited hours. He must be allowed to take (at least 10 minutes every hour).
It is my medical opinion, based upon a reasonable degree of medical probability that Mr. Bishop is now permanently and totally disabled as of 11/5/02.
 {¶ 11} 5. On January 15, 2003, claimant filed an application for PTD compensation. On his application, claimant indicated that he was 72 years old, had completed the eighth grade and is able to read, write, and do basic math, and that his work history included working in auto sales and service, and as an electrician and electrical contractor. Claimant also submitted the November 29, 2002 report of his treating physician, Dr. Miller.
 {¶ 12} 6. Relator sent claimant a letter concerning a potential job that relator would be able to offer. That letter states, in total, as follows:
While you are recovering from your injury, I would like to take this opportunity to offer you a light duty job to accommodate your restrictions. This is a temporary position that will be evaluated from time to time as your condition improves.
We have work available in the RV service department. The tasks will be scheduling staff to perform walk-thrus on the RV's.
You will not be required to stand, walk, lift, bend, stoop or twist[.] You will be able to sit on a stool if necessary. You will be needed 3 days a week (Monday, Wednesday and Friday), a maximum of 5 hours a day. You will not be required to sit more [than] 60 minutes without a break of at least 10 minutes.
You are expected to be at work for this light duty job at 8:00 am on Monday[,] March 10, 2001. If you do not respond to this light duty offer we may interpret that as a voluntary termination of employment.
 {¶ 13} 7. Thereafter, claimant was seen by Dr. Miller on March 6, 2003, and Dr. Miller authored the following letter:
After examination of this man, it is my medical opinion that he is unable to return to work at this time. He has significant limitations regarding activities involving his left shoulder and left hip.
It is my understanding that Mr. Bishop has been offered a "light duty job", however, it is my medical opinion that he is not capable of performing his old job or any other job at this present time. My decision is based upon his physical examination and limitations noted by my exam performed in the office earlier today.
 {¶ 14} 8. Pursuant to the examination and opinion of his treating physician, claimant did not return to work.
 {¶ 15} 9. Relator had claimant examined by Dr. Jose Luis Chavez, who issued a report dated March 20, 2003. Dr. Chavez opined that relator had reached maximum medical improvement ("MMI"), assessed a 29 percent whole person impairment, concluded that claimant could not return to his former position of employment, but that he could return to light-duty work such as the position described in relator's February 26, 2003 letter.
 {¶ 16} 10. An independent medical examination was conducted by Dr. James T. Lutz, who issued a report dated April 1, 2003. Dr. Lutz concluded that relator had reached MMI, assessed a 34 percent whole person impairment, and concluded that claimant could perform sedentary work with the following additional restrictions: no work over chest height and no repetitive use of the left upper extremity.
 {¶ 17} 11. A vocational assessment was prepared by William T. Cody, MS, CVE, CRC, CCM, dated May 15, 2003. Mr. Cody was of the opinion that claimant would not be able to perform the job offered by relator and stated as follows:
Mr. Bishop was offered an accommodated, sedentary job. Mr. Holman (2003), in his letter, clearly indicates that this position is a temporary job and Mr. Bishop will be "evaluated" from "time to time". Dr. Lutz opines that Mr. Bishop has reached maximum medical improvement. Therefore, Mr. Bishop's "condition" will not be improving as Mr. Holman expects. The limitations Dr. Chavez provides preclude Mr. Bishop from being able to perform this accommodated job. * * *
 {¶ 18} Mr. Cody also noted that claimant's prior work experience has been in the light to very heavy levels and that, although he has acquired skills which would transfer to other medium level jobs, claimant has no experience and/or skills that would transfer to sedentary work. Based upon that, Mr. Cody concluded that only unskilled sedentary work activity could be appropriate for claimant. However, given claimant's limited eighth-grade education, and his manual trade work history, Mr. Cody concluded that he would be unable to perform semi-skilled jobs within his physical restrictions, especially clerical based work. Furthermore, given Dr. Lutz's restriction involving the repetitive use of the left upper extremity, Mr. Cody concluded that that limitation would preclude claimant from other work that may be considered appropriate, as all unskilled work requires a repetitive use of both upper extremities. Furthermore, Mr. Cody concluded that, at the age of 73, claimant could not perform any new kind of work activity. Inasmuch as age would provide significant obstacles to his being able to adjust to a new kind of work activity, combined with his physical impairments, his advanced age would be a contributing factor to an inability to make vocational adjustments. In conclusion, Mr. Cody opined that, based upon an advanced age, limited education, manual trade work history, and the physical limitations he has, he was permanently and totally occupationally disabled.
 {¶ 19} 12. The application for PTD compensation was heard before a staff hearing officer ("SHO") on June 27, 2003, and resulted in an order granting the requested compensation. The SHO relied upon the medical report of Dr. Lutz and concluded that claimant was capable of performing sedentary employment with the additional restrictions noted by Dr. Lutz. The SHO also concurred with Mr. Cody's assessment and provided the following vocational analysis:
The Staff Hearing Officer further finds that the injured worker is 73 years old, has a eighth grade education, and work experience as an electrician and porter. The Staff Hearing Officer finds that the injured worker's age is a barrier to reemployment in that it would make it difficult for the injured worker to adapt to new work rules, processes, methods, procedures and tolls involved in a new occupation. The Staff Hearing Officer further finds that the injured worker's limited education is a barrier that would limit his access to sedentary occupations. Specifically, the Staff Hearing Officer finds that the injured worker would not be qualified to perform clerical type occupations. The Staff Hearing Officer further finds that the injured worker's work experience did not provide him with transferable skills to sedentary occupations. Therefore, the Staff Hearing Officer finds that the injured worker's work experience is a barrier to reemployment. Considering the injured worker's age, education, and work experience in conjunction with his physical limitations as a result of the allowed conditions, the Staff Hearing Officer finds that the injured worker is unable to perform any form of sustained remunerative employment. Therefore, the injured worker's application for permanent total disability compensation is granted.
 {¶ 20} At the hearing, relator argued that claimant had rejected a bona fide light-duty job offer and that, pursuant to Ohio Adm. Code4121-3-34(D)(1)(e), the SHO should automatically deny PTD compensation. In addressing that issue, the SHO specifically found as follows:
The Staff Hearing Officer reviewed the light duty job offer made by the employer, Holman Motors Inc. to the injured worker dated February 26, 2003. While the job offer purportedly complies with the restrictions noted by Dr. Lutz, the job offer fails to identify the specific duties required of the injured worker. The Staff Hearing Officer further finds that the offered job is a "temporary position that will be evaluated from time to time". The Staff Hearing Officer finds that such position is not a bona fide job offer as contemplated by the Ohio Administrative Code. Accordingly, the Staff Hearing Officer finds that the injured worker's refusal to accept such job offer is not an abandonment of employment.
 {¶ 21} 13. Relator's further appeal was refused by order of the commission mailed August 27, 2003.
 {¶ 22} 14. Thereafter, relator filed the instant mandamus action in this court. Conclusions of Law:
 {¶ 23} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967),11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State exrel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 24} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephenson v. Indus. Comm. (1987),31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v. Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel.Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 25} In this mandamus action, relator contends that the commission abused its discretion by failing to comply with Ohio Adm. Code 4121-3(D)(1)(e), which provides as follows:
If, after hearing, the adjudicator finds that the claimant is offered and refuses and/or fails to accept a bona fide offer of sustained remunerative employment that is made prior to the pre-hearing conference described in paragraph (C)(9) of this rule where there is a written job offer detailing the specific physical/mental requirements and duties of the job that are within the physical/mental capabilities of the claimant, the claimant shall be found not to be permanently and totally disabled.
 {¶ 26} Relator asserts that it made a bona fide offer of sustained remunerative employment to claimant, within his restrictions, which claimant refused, thereby mandating that the commission deny his application for PTD compensation. For the reasons that follow, this magistrate disagrees.
 {¶ 27} In determining that relator had not made a "bona fide offer sustained remunerative employment," the SHO specifically noted that the job offer purportedly complies with Dr. Lutz's restrictions; however, the job offer itself fails to identify the specific duties required by claimant. Furthermore, the SHO noted that the job being offered was a "temporary" position that, based on those two findings, the offer was not a bona fide one. This magistrate agrees.
 {¶ 28} In reviewing the job offer made by relator, it was made clear that claimant would not have to do certain things. As such, the job offer did purportedly appear to be within Dr. Lutz's restrictions. However, as the SHO noted, nowhere in that job offer was it explained what claimant's actual duties would have been. As such, although the job offer appeared to indicate that claimant would not have to do anything outside the restrictions given by Dr. Lutz, the job offer failed to list any of the actual duties which claimant would have to perform and how the claimant was to perform them. As such, this magistrate agrees with the commission's conclusion that relator's offer of employment failed to identify the specific duties required of claimant and that, for that reason alone, it was not a bona fide offer.
 {¶ 29} Furthermore, the commission noted the "temporary" nature of the job offer being made. This magistrate notes that, in his vocational assessment, Mr. Cody noted that relator's offer was stated to be temporary so that it could "be evaluated from time to time as [claimant's] condition improves." As Mr. Cody noted, the restrictions given by Dr. Lutz were permanent, and Dr. Lutz had concluded that claimant had reached MMI. A finding of MMI implies that no further improvement is to be expected. As such, one would not expect that the job could be modified in the future when claimant's condition improved as it was not expected that the claimant's condition would actually improve. While relator argues in its brief before the magistrate that all jobs are temporary from the standpoint that none of us is guaranteed lifetime employment, this magistrate specifically notes that the temporariness of this particular job offer was specifically conditioned on waiting to see if claimant's physical condition improved. Upon that basis, this magistrate also finds that the commission correctly found that it was not a bona fide job offer.
 {¶ 30} Inasmuch as that is the sole issue raised in this mandamus action, this magistrate concludes that relator has not shown that the commission abused its discretion in concluding that relator had not made a bona fide offer of sustained remunerative employment which the claimant had rejected. As such, the commission did not abuse its discretion when it granted claimant's request for PTD compensation. Inasmuch as this magistrate finds that, in all other respects, the commission's order is satisfactory and complies with the law, this magistrate recommends that relator's request for a writ of mandamus be denied.